IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT LEE LOPEZ,

    Petitioner,                      No. 2:04-cv-1316 MCE JFM (HC)

   vs.

SCOTT KERNAN, Warden, et al.,

    Respondents.              FINDINGS AND RECOMMENDATIONS

                                /

          Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1997 conviction on charges of transportation and possession of a controlled substance and false personation, and the sentence of two consecutive indeterminate terms of twenty-five years to life in prison imposed thereon.  (Resp'ts' Motion to Dismiss, Ex. A.)  Petitioner also received a four-year term for prior convictions pursuant to California Penal Code § 667.5(b).  Petitioner raises two claims in his second amended petition, filed November 8, 2007, that his prison sentence violates the Constitution.

/////

/////

1

FACTS[1]

On February 17, 1996, Police Officer Elmer Marzan was on patrol, when he saw [petitioner] driving a beige Ford Escort and not wearing a seat belt. The officer turned his motorcycle around and observed [petitioner] pulling into a driveway. Officer Marzan stopped in front of the driveway as [petitioner] got out of his vehicle. Marzan informed [petitioner] that he was going to write him a ticket for not wearing a seat belt. He asked for [petitioner's] driver's license and registration. [Petitioner] replied that his license was suspended.

Officer Marzan then requested [petitioner's] name and birth date. [Petitioner] replied that his name was Francisco Lopez, Jr., and his birth date was August 15, 1946. The officer ran a check on this name and found a valid driver's license with no prior convictions. Marzan thought this suspicious because [petitioner] had told him that his license had been suspended for driving under the influence. Officer Marzan again asked him what his real name was, and [petitioner] stated, "Okay. My name is Alfred Maisonet," and gave his birth date as June 23, 1949. Running a check on this new information, the officer again found a valid license with no prior convictions.

In response to further questioning, [petitioner] insisted he was Maisonet. Marzan asked [petitioner] if he had a wallet, and [petitioner] said he did not. When [petitioner] reached for something under his shirt, the officer instructed him to keep his hands out in front of him. He patted [petitioner] down, and something fell to the ground from [petitioner's] pant leg. It was a wallet. There was no identification inside the wallet, but there was a small baggy with white powdery residue which the officer believed to be methamphetamine. At this point, [petitioner] fled on foot. Officer Marzan gave pursuit and took [petitioner] into custody.

In custody, the officer inventoried [petitioner's] property that was on [petitioner's] person. One item recovered was a small purse with a wadded up dollar bill concealing two rock-like substances, later determined to be methamphetamine. During his booking at the county jail, [petitioner] gave police the following information: name - Frank Lopez, Jr.; birth date - August 15, 1947; and social security number - 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.

A certified Soundex and the Department of Motor Vehicles driving record established that there is a Francisco Lopez, with a

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Lopez, No. #C026805 (March 1, 1999), a copy of which is attached as Exhibit B to Respondent's Motion to Dismiss, filed September 22, 2004.

1     birth date of August 15, 2946, living in La Jolla, California.
2     Francisco Lopez, who was born on August 15, 1947, is [petitioner's] half brother.  Alfred Maisonet is also [petitioner's] brother.[2]

(People v. Lopez, slip op. at 2-4.)

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

---

[2] The record does not indicate whether Maisonet is [petitioner's] brother or half brother.

3

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II. Petitioner's Claims

    A. Claim One

Petitioner's first claim is that the state trial court committed constitutional error when it allowed the jury to presume "identity of a person" from "identity of name" in deciding whether petitioner suffered prior convictions. Respondents contend that the jury instruction was not erroneous but that even assuming it was, it did not prejudice petitioner.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim as follows:

> In the second phase of the bifurcated jury trial, the prosecution submitted into evidence three separate certified section 969b[3] packages, a certified copy of [petitioner's] "rap sheet," and a certified copy of [petitioner's] 1982 prior convictions. These documents showed the conviction of "Robert Lee Lopez" on 15 prior felony charges.
>
> The jury was instructed that "The identity of a person may be presumed, or inferred, from identity of name." [Petitioner] claims that this instruction is no longer good law because (1) the statute on which it was based (former Code Civ. Proc., § 1963, subd. 25) was repealed, and (2) it improperly shifted the burden to him to

/////

---

[3] This section provides: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime . . . under the laws of this State has been convicted of an act punishable by imprisonment . . . the records or copies of records of any state penitentiary, reformatory, county jail . . . in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

4

> show that he was not the Robert Lee Lopez who suffered the prior convictions.
>
> [Petitioner] is mistaken.  The presumption formerly contained in Code of Civil Procedure section 1963, subdivision 25, was not continued in the Evidence Code.  (*People v. Luckett* (1969) 1 Cal.App.3d 248, 253.)  As late as 1986 the court in *People v. Mendoza* (1986) 183 Cal.App.3d 390, 401, stated "[i]t has long . . . been the rule in California, in the absence of countervailing evidence, that *identity of person may be presumed, or inferred, from identity of name.* [Citations.]" (Italices added and in original.)[4]  Thus, even after the demise of section 1963, subdivision 25, it has been the rule that "in the absence of other and contrary testimony, the identity of names, coupled with proper proof of prior convictions, is sufficient to sustain a finding that [petitioner] was the person involved in the earlier cases. [Citation.]"  (*People v. Mason* (1969) 269 Cal.App.2d 311, 314, fn. omitted.)
>
> Furthermore, the jury had before them three section 969b packets, two containing photographs of the person convicted. [Petitioner] was present at trial, and the jury was able to compare his visage with the photographs contained in the 969b materials. Thus, to the extent the identity instruction was erroneous, it was not prejudicial.

(People v. Lopez, slip op. at 12-14.)

In general, a challenge to jury instructions does not state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir.

---

[4] Code of Civil Procedure section 1963, subdivision 25, was repealed because California courts refused to approve of a presumption instruction where the name was a common one. (E.g., *People v. Wong San Lung* (1906) 3 Cal.App. 221, 224.)  However, as the comment notes, the courts have continued to allow an inference of identity where the name is distinctive or unusual.  (See Cal. Law Revision Com com., 20 West's Ann. Code Civ. Proc. (1983 ed.) § 1963, subd. 25, p. 625.)  In the present case, "Robert Lee Lopez" is not a common name.  Hence the jury could, consistent with current law, properly draw an inference of identity based on the fact that [petitioner's] name was identical to the "Robert Lee Lopez" appearing in the captions of the pleadings.  (See *People v. Sarnblad* (1972) 26 Cal.App.3d 801, 805; *People v. Luckett*, *supra,* 1 Cal.App.3d at p. 252.)

1988) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner must demonstrate that the "ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  <u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991)).  In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'"  <u>Prantil</u>, 843 F. 2d at 317 (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir. 1984)).  <u>See</u> also <u>Middleton</u>, 541 U.S. at 437.

The record reflects that the jury was instructed that "[t]he identity of a person may be presumed, or inferred, from identity of name."  (CT 148.)

The jury instruction given did not misstate California law.  "[C]oncordance in name alone is always some evidence of identity of person."  <u>McInerney v. United States</u>, 143 F. 729, 739 (1st Cir. 1906).  Petitioner has failed to demonstrate that the giving of this jury instruction violated clearly established United States Supreme Court precedent.  Exhibits provided to the jury included petitioner's fingerprints, birth date and a photograph (CT 242-267; 266) and demonstrate that the jury did not give undue weight to petitioner's name.  Accordingly, the state court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Petitioner's first claim for relief should be denied.

B.  <u>Second Claim</u>

Petitioner's second claim is that his sentence violates the Eighth Amendment because it is cruel and unusual and disproportionate to the underlying offenses.  Respondents argue petitioner's sentence does not violate the Eighth Amendment.  <u>Taylor v. Lewis</u>, 460 F.3d 1093 (9th Cir. 2006) (upheld 25-year-to-life sentence for possession of .036 grams of cocaine); <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003).

/////

/////

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim as follows:

> In a supplemental brief, [petitioner] claims his sentence of 54-years-to-life constitutes cruel and unusual punishment in violation of the Eighth Amendment to the federal Constitution and article I, section 17 of the California Constitution.
>
> "The California Constitution prohibits 'cruel or unusual punishment.' We construe this provision separately from its counterpart in the federal Constitution. [¶] A punishment may violate the California Constitution although not 'cruel or unusual' in its method, if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (*In re Lynch* (1972) 8 Cal.3d 410, 424 . . . fn. omitted.) The *Lynch* court identified three techniques the court used to administer this rule. First, they examined the nature of the offense and the offender. (*Id.* at p. 425.) Second, they compared the punishment with the penalty for more serious crimes in the same jurisdiction. (*Id.* at p. 426.) Third, they compared the punishment to the penalty for the same offense in different jurisdictions. (*Id.* at p. 427.)" (*People v. Cartwright* 1995) 39 Cal.App.4th 1123, 1135-1136; some citations, internal quotations, and italics omitted.)
>
> Regarding the offense and the offender, [petitioner] contends his drug addiction and the fact that his present offenses involved no victim should be considered mitigating factors. However, the record shows that since the age of 15, [petitioner] has spent most of his time either engaging in criminal activity or serving time in incarceration. "[T]he three strikes law punishes not only [petitioner's] current offense[], but also his recidivism." (*Cartwright, supra,* 39 Cal.App.4th at p. 1136.) Thus, [petitioner] is being punished for reoffending, following 15 felony convictions, including 9 robberies and 2 auto thefts, and not merely for his drug addiction or his false personation.
>
> [Petitioner] also points out that a person who commits cold-blooded, premeditated murder with a deadly weapon would receive a lesser sentence than [petitioner] did in the present case. The analysis is not helpful. "[A] comparison of appellant's punishment for his current crime with the punishment for other crimes in California is 'inapposite since *it is his recidivism in combination with his current crimes* that places him under the three strikes law.' [Citation.]" (*People v. Gray* (1998) 66 Cal.App.4th 973, 993, italics added.)

/////

> Regarding punishment for the same offense in other jurisdictions, [petitioner] claims that in a majority of states, he would be eligible for release on parole in 10 years or less. We are unpersuaded. Although California's three strikes statute may be harsher than other states' schemes in certain respects, it is part of a nationwide pattern of recidivist statutes providing substantially increased sentences for habitual offenders. (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1416.) The law provides ample warning that offenders with two "strikes" are eligible for life imprisonment upon commission of any felony. Application of the harsh penalty to persons such as [petitioner] is neither cruel nor inhumane. "Fundamental notions of human dignity are not offended by the prospect of exiling from society those individuals who have proved themselves to be threats to the public safety and security." (*Ibid*.)
>
> The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime. (*People v. Cartwright, supra,* 39 Cal.App.4th at p. 1135.) [Petitioner's] sentence is neither extreme nor grossly disproportionate, in light of his lengthy and habitual history of criminality. *(Cartwright, supra; Rummel v. Estelle* (1980) 445 U.S. 263 (63 L.Ed.2d 382] [life sentence for a nonviolent recidivist convicted of obtaining $120.75 by false pretenses].) His constitutional claims must be rejected.

(People v. Lopez, slip op. at 16-17.)

In Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)). The U.S. Supreme Court in Andrade concluded that two consecutive twenty-five years to life sentences with the possibility of parole, imposed under California's Three Strikes law following two petty theft convictions with priors, did not amount to cruel and unusual punishment. Id. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a sentence of twenty-five years to life imposed for felony grand theft under California's Three Strikes law did not violate the Eighth Amendment).

/////

Following the decision in <u>Andrade</u> the United States Court of Appeals for the Ninth Circuit held that a third strike sentence of twenty-five years to life in prison for a third shoplifting offense, a "wobbler" under state law[5], constituted cruel and unusual punishment. <u>Ramirez v. Castro</u>, 365 F.3d 755 (9th Cir. 2004). In so holding, the court relied upon the limited and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's only prior period of incarceration had been a single one-year jail sentence. <u>Id.</u> at 768-69. Thereafter, in <u>Rios v. Garcia</u>, 390 F.3d 1082 (9th Cir. 2004), another panel of the Ninth Circuit distinguished the holding in <u>Ramirez</u> from the situation it confronted, finding that the petitioner in <u>Rios</u> had a "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used to enhance the petitioner's sentence had "involved the threat of violence." <u>Id.</u> at 1086.

This court finds that in this case petitioner's sentence does not fall within the type of "exceedingly rare" circumstance that would support a conclusion that his sentence violates the Eighth Amendment. Petitioner's jury found him guilty of transporting methamphetamine, possession of methamphetamine, and false personation, and that petitioner had suffered 15 prior felony convictions. Under those circumstances, the state courts' rejection of petitioner's Eighth Amendment claim was neither contrary to, nor an unreasonable application of clearly established federal law, as set forth above. Petitioner's second claim for relief should therefore be denied.

For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[5] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable law. See <u>Ferreira v. Ashcroft</u>, 382 F.3d 1045, 1051 (9th Cir. 2004).

"Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 30, 2009.

/s/ John F. Moulds
UNITED STATES MAGISTRATE JUDGE

001; lope1316.157